IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20171-CR-KING

UNITED STATES OF AMERICA,

v.

FEDERICO M. FERMIN, and TERRI L.
DECUBAS,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTIONS FOR POST-VERDICT JUDGMENT OF ACQUITTAL

**THIS CAUSE** came before this Court upon Defendants Federico Fermin and Terri Decubas' Motions for Post-Verdict Judgment of Acquittal (DE #202, 204), filed May 23, 2011 and May 25, 2011, respectively.[1] Both Motions seeks post-verdict acquittal as to Count V of the Superseding Indictment (DE #50), which charged Defendants with Conspiracy to Distribute Prescription Drugs Wholesale without a License from March 2005 through August 2005.[2] Both Defendants contend that there was insufficient evidence of knowledge of either Defendant as to the criminal conspiracy which was the basis for the Government's Superseding Indictment (DE #202 at 7; 204 at 6), and that the drug shipments in question constituted intracompany transfers and as such were exempt from the Prescription Drug Marketing Act, 21 U.S.C. § 331 *et seq.*

---

[1] Defendants' Motions have been well-briefed, as the Government filed an Omnibus Response (DE #213) on June 8, 2011, to which Defendant Fermin filed a Reply (DE #222) on June 24, 2011 and Defendant Decubas filed a Reply (DE #219) on June 17, 2011. Additionally, the Government has filed a Sur-Reply to each Motion, filing one as to Fermin's Motion on July 19, 2011 and another as to Decubas' Motion on July 1, 2011.

[2] The Court here notes Decubas' contention that she "was much less involved" than her co-Defendant Fermin. (DE #219 at 1). Defendants' Motions have been considered on their individual merits, and discussion is only joined herein for the purpose of judicial convenience.

Defendant Decubas further argues that the Government failed to submit any evidence to the jury as to an underlying element to Count V: whether the drugs distributed were in fact prescription drugs.[3]  (DE #204 at 8-10).

In deciding Defendants' post-trial Rule 29 Motions, the Court must view all the evidence in the light most favorable to the Government and draw all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Williams*, 390 F.3d 1319, 1323 (11th Cir. 2004); *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (same).  Substantial evidence is necessary to support a criminal conviction. *United States v. Adkinson*, 158 F.3d 1147, 1152 n.10 (11th Cir. 1998).

Upon review of the parties' filings and the evidence adduced at trial, the Court finds that Defendants' Motions must be denied.  There was substantial evidence of Defendants' knowledge to support Defendants' conviction under Count V of the Superseding Indictment.  Although Defendants claim that the Government's case relies upon inadequate circumstantial evidence, the Court cannot agree.

### I. Knowledge and Involvement in Criminal Conspiracy

As to Fermin, the Government showed that Mr. Fermin was employed at Meridian Healthcare Distributors and that he played a role in conspiring to distribute prescription drugs wholesale without a license.  Prescription drugs were found at his office in Weston, Florida.  Additionally, he participated in a cover-up of that criminal activity in 2005, after the FDA had requested invoices of prescription drug purchases from certain companies.  The evidence adduced at trial also demonstrates that Fermin played a central role in recruiting a third party to found a corporation, Swift Freight,

---

[3] In his Reply (DE #222), Defendant Fermin joined in this argument.

whose sole purpose was to assist in the furtherance of the conspiracy. Finally, Mr. Fermin's involvement as a signatory on approximately $5 million of the $13 million paid to shell companies subsequent to sale of the unlicensed prescription drugs also implies knowledge of the underlying conspiracy. This evidence is substantial and sufficient to support the jury's finding as to Fermin's guilt under Count V.

As to Decubas, the Government similarly demonstrated knowledge and involvement in conspiring to distribute prescription drugs without a license. It is undisputed that Defendant Decubas held managerial positions at Meridian Healthcare, where she was a signatory to certain relevant accounts and actually signed approximately $1 million in checks. Given Decubas' association with another co-Defendant, Jose Castillo, and his involvement in an earlier operation which was shut down for distributing unlicensed prescription drugs, a jury could have reasonably inferred knowledge of Castillo's underlying criminal activity. Additionally, Decubas was also involved in soliciting a third individual to create Swift Freight, and she wrote him multiple checks out of the Meridian account on that basis. Given the totality of the evidence introduced at trial regarding Decubas' involvement, the jury could have reasonably inferred that Decubas knew of the manner in which Swift Freight was to be used to further the underlying conspiracy and that she was in other ways involved in the conspiracy.

## II.   Acts not Exempt from Prescription Drug Marketing Act

Defendants also contend that the network of shipments of drugs in this instance did not constitute an "intracompany" transfer within the meaning of the Prescription Drug Marketing Act. Defendants' argument rests upon the contention that the companies involved with the conspiracy in question—Pharmacy Distributors Group, Meridian,

3

Kirby, and Swift Freight—"were controlled or owned by the same individual and functioned, in fact, as branches of each other."

However, the evidence produced at trial demonstrates otherwise. The corporations in question were incorporated by separate individual in separate states at separate times. Moreover, no evidence was submitted to the jury which would support a finding that ownership of these separate business interests was retained by one individual or corporation. Indeed, the opposite was shown where the Government introduced evidence that Pharmacy Distributors Group was a small Texas business with a state license to distribute prescription drugs wholesale that had a business relationship with Meridian, but was operated independently. Moreover, Pharmacy Distributors Group was purchased by another corporation, Sigma Global, in October 2004.[4] As such, the companies involved in the conspiracy were not owned by the same individual or corporation, and therefore any transactions between those discrete units cannot be considered "intracompany." Therefore, the jury's findings in this regard were reasonable and proper.

### III.   Proof of Distribution of Prescription Drugs

Decubas has further argued that the Government failed to prove a required element of its case against her: whether the drugs shipped by Defendants to Pharmacy Distributors Group in Texas were indeed prescription drugs. Fermin, by his Reply, also joined in this contention.

---

[4] There is some record dispute regarding whether Sigma Global owned Pharmacy Distributors Group at the time of the conspiracy. However, given the totality of the evidence put forth by the jury, the Court finds that the jury could have nonetheless reasonably determined that the transactions in question did not constitute "intracompany" transfers.

The Court finds that there was substantial proof that the drugs shipped by Meridian and the Defendants were indeed prescription drugs. Testimony from numerous employees involved in the conspiracy, including employees of Meridian, Pharmacy Distributors Group, and pharmacy owners, indicates that the products that were the basis of the conspiracy were prescription drugs. A jury could have reasonably relied on such testimony in finding that prescription drugs were involved.

### IV. Conclusion

The Court will not disturb a jury's findings where, as here, the evidence showed not only knowledge on the part of Defendants, but also active participation in a conspiracy to distribute prescription drugs wholesale. Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendant Fermin's Motion for Post-Verdict Judgment of Acquittal (DE #202) be, and the same is hereby, **DENIED.**

2. Defendant Decubas' Motion for Judgment of Acquittal After Verdict (DE #204) be, and the same is hereby, **DENIED.**

**DONE AND ORDERED** in Chambers, at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 21st day of July, 2011.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:

**All counsel of record**